Robert Louis DRYDEN (or White), Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Dec. 13, 1968.

Paul K. Murphy, Louisville, Juvenile Defender Service, Legal Aid Society, for appellant.

John B. Breckinridge, Atty. Gen., David Murrell, Asst. Atty. Gen., for appellee.

PALMORE, Judge.

Robert Louis Dryden, a juvenile, appeals from an order of the Jefferson Circuit Court denying him an appeal from a decree of the Jefferson County Court, Juvenile Division, which found that he came within the purview of KRS 208.020 and committed him to the custody of the Department of Child Welfare. See KRS 208.190, 208.200, and 208.380.

The affidavit of merits filed with the motion for appeal in the circuit court gives the following factual information:

Robert is a 15-year old 7th-grade pupil. On March 23, 1967, an officer named Yonts arrested him without a warrant for truancy. Yonts testified that under questioning at police headquarters Robert orally admitted having participated in a break-in at Male High School on March 19, 1967. Testifying in his own behalf Robert admitted that he made this statement but claimed it was given under duress and was not true. He denied having taken part in

the break-in. His alibi defense was corroborated by another witness. There was no incriminating evidence against him except for the testimony of officer Yonts. He was found guilty of having committed a public offense and was placed in custody of the Department.

The affidavit of merits states as grounds for appeal that (1) a juvenile cannot waive his constitutional rights while in a police station without the presence of parent or counsel; (2) in any event, the waiver in this case was not voluntary; and (3) the oral confession was not admissible in evidence.

Robert is an indigent. He was represented in the juvenile court and circuit court, and is represented in this court, by a representative of the Juvenile Defender Service of the Legal Aid Society in Louisville.

According to the record, Robert's motion for an appeal to the circuit court was sustained on June 5, 1967; on June 8, 1967, the case was continued until July 18, 1967, and Robert was released in custody of his mother; on July 18, 1967, pursuant to the Commonwealth's motion the case was continued until September 26, 1967; on the latter date it was reassigned to November 15, 1967; on November 15, 1967, again pursuant to the Commonwealth's motion, it was continued until December 8, 1967; and on December 8, 1967, the appeal was denied without an evidentiary hearing and Robert was remanded to custody of the juvenile authorities. The circuit judge declined to give any reason for denying the appeal.

In his motion for an appeal to the circuit court Robert demanded a trial by jury. His contention in this court is that he is entitled to a *de novo* trial by jury in the circuit court.

The Commonwealth contends that appellant is not entitled to a trial in the circuit court, does not have a right of appeal to this court, and that if he did have an appeal to this court it became moot when the juvenile court later entered an order trans-

ferring his custody from the Department to the Louisville and Jefferson County Children's Home. Frankly, we do not think this latter point merits discussion.

The provision for an appeal to the circuit court, now KRS 208.380, originally was introduced by Chapter 62, § 1, Acts of 1932, as a part of Criminal Code of Practice § 362. It calls for an affidavit of merits stating the nature of the controversy "and such facts as are necessary to enable the circuit judge to determine whether an appeal shall be allowed."

■ "It was manifestly the intention of the Legislature that the question of delinquency should be tried de novo in the circuit court, and if the appellant should again be found to be a delinquent, that the judgment of the juvenile session of the county court should be considered as affirmed and the county judge should proceed to enforce the original judgment." Wooton v. Commonwealth, 255 Ky. 810, 75 S.W.2d 556, 558 (1934).

In Joseph v. Commonwealth, Ky., 310 S.W.2d 279 (1958), the attempted appeal of a juvenile defendant to the circuit court was dismissed without a stated reason, whereupon this court assumed that the ground for dismissal was a conclusion by the circuit court that it did not have jurisdiction. It having been held in the earlier case of Brewer v. Commonwealth, Ky., 283 S.W.2d 702 (1955), that if the circuit court erroneously dismisses the appeal for lack of jurisdiction it violates the defendant's right to equal protection of the laws under the 14th Amendment of the U. S. Constitution, an appeal to this court was entertained on the constitutional ground. In the later case of Tunget v. Commonwealth, Ky., 320 S.W.2d 796 (1959), a judgment of the circuit court affirming the juvenile court judgment pursuant to a jury verdict returned in the circuit court was held unappealable to this court.

Although the record here does not reveal the reason or reasons for which the appeal was denied by the circuit court, the

transcript does contain the following remark made by the presiding judge at the time he made his final ruling: "This court accepts jurisdiction of the action herein." Because, therefore, it thus appears that the appeal was not denied on an erroneous jurisdictional ground, the Commonwealth, relying on *Tunget,* argues that there is no appeal to this court. The basis for this argument is the following statement in *Tunget*: "The rule is that a juvenile defendant has no right of appeal to this Court under the provisions of Chapter 208, Kentucky Revised Statutes, except where the circuit court has erroneously dismissed an appeal from the juvenile session of the county court on the ground of lack of jurisdiction."

■ We think that what was meant to be said in *Tunget,* and we so construe it now, is that if an appeal has been heard and determined on its merits by the circuit court there is no appeal to this court (absent, of course, a constitutional ground). An arbitrary dismissal or denial of an appeal is equally offensive to the rights guaranteed by the 14th Amendment, and by Section 2 of the Kentucky Constitution, whether it results from an erroneous conclusion as to jurisdiction or from some other improper reason.

■ We are brought, therefore, to the question of whether the circuit court's denial or dismissal of the appeal in this case can be supported on a discernible valid basis, and that involves the sticky problem of what is meant by the language of KRS 208.380 stating that the purpose of an affidavit of merits is "to enable the circuit judge to determine whether an appeal shall be allowed." Certainly all would agree that at least it means the circuit court need not entertain an appeal that is patently frivolous. And we agree also that if the affidavit presents a purely legal as distinguished from a factual issue the circuit court may deny the appeal upon resolving the legal question adversely to the appellant, in which event there would be no

occasion for a *de novo* trial. In this case, however, the affidavit of merits presents both legal and factual issues, none frivolous, which involve the vital constitutional protection against self-incrimination. Cf. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

■ *Gault*, of course, invites re-examination of (though it does not decide) the question of whether a juvenile defendant is constitutionally entitled to an appeal in any case. It may be that he is, both to the circuit court and to this court. But we need not extend our inquiry that far in this instance. This much we can and do say now, that if the circuit court denies an appeal that presents a substantial factual issue or a question of constitutional law, its action in so doing is reviewable by this court.

■ Robert's affidavit of merits charges that his inculpatory statement was not voluntary and was elicited under circumstances that make it constitutionally inadmissible against him. It is our opinion that this entitles him to a trial *de novo* on his appeal to the circuit court. Whether the statement made to officer Yonts is for any reason legally inadmissible is a question to be decided by the circuit court in due course, though in view of *Gault* if what the affidavit says is true the answer will be obvious.

*Gault* did not reach the question of whether a defendant in a juvenile proceeding is constitutionally entitled to a trial by jury. It did hold that the abridgement of freedom which is the ultimate consequence of an adverse judgment is sufficiently similar to a criminal sentence to require, under the Sixth Amendment made applicable by the Due Process Clause of the 14th Amendment, a hearing that measures up to the essentials of due process and fair treatment, including but not necessarily limited to reasonable notice, assistance of counsel, the privilege against self-incrimination, and confrontation and sworn testimony by witnesses subject to cross-examination. At the time

*Gault* was handed down the Supreme Court had not held the right to a jury trial applicable to the states under the Due Process Clause of the 14th Amendment, but it later so held in Duncan v. Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522 (1968). Hence it is argued in behalf of Robert that this right also comes within the coverage of *Gault*.

The precise question was presented to the Supreme Court in the case of In re Whittington, 391 U.S. 341, 88 S.Ct. 1507, 20 L.Ed.2d 625 (1968), but the proceeding was remanded to the Ohio Supreme Court "for consideration in light of *Gault*." That is the present state of affairs, and we find ourselves in about the same shape as the Ohio Supreme Court, wishing we had a crystal ball.

The Supreme Court of New Mexico, in holding that under its state constitution a juvenile is entitled to trial by jury, commented on *Gault* as follows: "We would add that if the reasoning of In re Gault, supra, is applied in this case it would be difficult, in our view, to escape the conclusion that the jury trial guaranties of Art. II, § 14, N.M.Const., as well as those of the Sixth Amendment of the United States Constitution are likewise applicable." Peyton v. Nord, 78 N.M. 717, 437 P.2d 716, 723 (1968).

On the other hand, the Superior Court of Pennsylvania concluded that "those who find in *Gault* the obliteration of any distinctions between the treatment accorded juveniles and adults are reaching a conclusion that is unwarranted," and held that there is nothing in the philosophy or rationale of *Gault* to justify the conclusion that a jury trial is a matter of constitutional right in a juvenile proceeding. Commonwealth v. Johnson, 211 Pa.Super. 62, 234 A. 2d 9, 15 (1957).

Surely if the gravity of what may happen to a defendant in a juvenile proceeding is sufficient to invoke the other constitutional protections we have mentioned, by force of the same reasoning it would seem also

to call for the right to a jury trial, which could hardly be classified as a less vital instrument of protection than the others. But that is mere logic and, as Holmes observed, in the course of jurisprudential navigation logic can be a deceptive compass indeed. Both from our own experience and the fine exposition delivered by the Superior Court of Pennsylvania in Commonwealth v. Johnson, id., we are persuaded that *Gault* neither requires the conclusion nor foreshadows a decision by the Supreme Court that the constitutional right to a jury trial applies in a juvenile proceeding.

■ We are unwilling to equate a juvenile proceeding with a criminal trial, even though the basis for it is an accusation that the defendant has conducted himself in such a manner that if he were an adult he would be guilty of a crime. If the end result is or can be the same (i. e., a world of "white-washed walls, regimented routine and institutional laws"), it can make no sensible difference whether he is charged with having committed a criminal offense, of truancy, of habitual disobedience to his parents, or of being dependent, neglected, needy or abandoned. Cf. KRS 208.020(1) (a), (b), (c) and (d); KRS 208.200.[1] No matter which of these is found to be the case, the ultimate abridgement of freedom is the same, and it would seem ridiculous to surround the child accused of criminal conduct with greater safeguards than are invoked for the child whose conduct or condition is not so tainted.

A jury trial, with all the clash and clamor of the adversary system that necessarily goes with it, would certainly invest a juvenile proceeding with the appearance of a criminal trial, and create in the mind and memory of the child the same effect as if it were. In our opinion there is more to be lost than gained. Certainly we can-

not regard a jury as a better, fairer, more accurate fact-finder than a competent and conscientious circuit judge. There may be some judges who do not fit this description, but neither do all juries.

■ Unless and until further enlightened or otherwise directed by the Supreme Court, we hold that a jury trial is not a constitutionally guaranteed right in a juvenile proceeding.

In our reference to Tunget v. Commonwealth, Ky., 320 S.W.2d 797 (1959), we mentioned that a jury trial was had in the circuit court. Whether that was a proper procedure was not in issue. Our opinion is that a jury trial has no place in a juvenile proceeding.

The cause is reversed with directions that the appellant be given a trial *de novo* on his appeal to the circuit court.

All concur.

Concurring opinions by MILLIKEN and STEINFELD, JJ.

## SEPARATE CONCURRING OPINION

MILLIKEN, Judge.

I agree with the reversal of the judgment and with most of the reasoning of the majority opinion, but I would go a bit further—I would grant a jury trial in the circuit court.

Conceding that the legal issue is delinquency and not the commission of a crime, nevertheless, the commission of a crime is the basis of the finding of delinquency in this case. I do not believe that *Gault* necessarily will transmute the usually informal juvenile court proceeding into a truly adversary proceeding, but rather that *Gault* cloaks the juvenile court proceeding with certain constitutional safeguards ac-

1. The dispositional options under KRS 208.200 are the same except for one qualification, which is that a child coming under the purview of KRS 208.020 (1) (d) may not be committed to the Department unless the Department "has indicated to the court that it has facilities and funds available to care for the child and is willing to accept the commitment."

462

corded by our system whenever the freedom of the individual is threatened—the right to counsel and freedom from self-incrimination. These constitutional safeguards can apply to informal juvenile court inquiries without converting them into truly adversary proceedings; they tend to assure that a child can not be transferred to institutional custody except on competent evidence and do not, as I see it, seriously impede the juvenile courts in their solicitous efforts to protect a troubled child.

But where a charge of criminal conduct is involved, I see no good reason to deny a jury hearing on that issue if one is requested, as it is here. I do not mean to imply that a jury trial must be had whenever commission of a crime is the basis of a charge of delinquency, but only that a jury trial should be afforded when requested in the child's appeal to the circuit court. In my judgment that would complete the cycle of constitutional protection of the child, and still permit our juvenile courts to perform their vital functions pretty much as they have except that counsel be required for the child to assure it the constitutional protection commanded by *Gault*.

SEPARATE CONCURRING OPINION

STEINFELD, Judge.

I agree that Dryden (White) is entitled to a trial de novo in the circuit court. He was accused of an offense, the equivalent of the commission of a crime, therefore, he is entitled in that court to have a jury determine his guilt or innocence, and if he is to lose his freedom. Article III, Sec. II and the 6th Amendment United States Constitution, Sec. 11 Kentucky Constitution. I so construe In re Gault, 387 U.S. 1, 87 S.Ct. 1428 (1967). See Peyton v. Nord, 78 N.M. 717, 437 P.2d 716, 723 (1968).

Proceedings in juvenile court are administrative. I concur with the majority opinion in holding that a jury trial is not required in the juvenile court so long as the right to appeal is preserved.[1]

I do not reach any conclusion as to a minor brought before the juvenile court on charges other than for the commission of crime or for a petty offense. That issue is not before us. If it were there would be other considerations and arguments.

---

1. See Standards Relating to Trial by Jury. Tentative Draft, May 1968, Institute of Judicial Administration; and A Constructive Response for Juvenile Courts, Weinstein & Goodman; 53 American Bar Association Journal 257.